# DECLARATION OF TODD CHRISTIAN HARTMAN

I, Todd Christian Hartman, declare:

1. I am the defendant in *United States v. Hartman,* SA CR 15-63-JLS. I make this declaration in support of Defendant's Motion to Suppress.

2. On February 5, 2015, early in the morning, law enforcement officers came to the apartment where I lived with my mother, at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮ I heard a loud pounding on the door while I was in bed. I went to open the door to find an officer pointing a military-style rifle at me. The officer pressed the rifle against my chest and pushed me with the rifle into the house, toward the apartment's kitchen area. When the rifle was pressed against my chest, I became terrified and thought I was going to die. When I first opened the door, I could see many officers outside the apartment, with guns drawn.

3. When I was adjacent to the kitchen area, the officers told me to place my hands up in the air, and I complied. I was then told to push my hands higher into the air. Detective David Syvock then walked behind me, lowered my hands, and restrained my hands behind my back. With my hands restrained behind my back, I was walked to the front deck of the apartment in nothing but my underwear, within sight of neighbors who were observing the commotion. I was eventually provided clothing. I think I was kept outside for approximately fifteen minutes.

4. Detective Syvock approached me and asked if there was somewhere private he could speak with me. I suggested the common kitchen space. Detective Syvock said no.

5. When I was outside, I needed to use the restroom, but I did not ask to go inside because I was intimidated by the large number of armed officers roaming my apartment. I knew there was a public restroom nearby. I approached the stairs leading down from my apartment to the street and an officer standing by the stairs said I could not leave.

6. Detective Syvock set up for my interrogation in my mother's bedroom. He then interrogated me there at least three separate times, with the door closed behind

me and another agent in the room. I was isolated from my mother. Between interrogations, I tried to go use the public restroom again. On my way out, an officer stopped me. He pointed his finger to my apartment, indicating to me that I should go back inside the apartment. He said, "you can't go this way." I understood from his gesture and his statement that I was not free to leave my apartment. I didn't want to tell him about my gastric distress because I was intimidated by him and the presence of the other armed officers.

7. When he interrogated me, Detective Syvock told me that I was not under arrest, and that, if I wanted to get up and walk out, I could. But I did not feel free to leave, since my efforts to leave were rebuffed by the officers themselves, both before the interviews started and in-between interrogations. It seemed to me that the officers were holding a perimeter preventing anyone from coming into or leaving the apartment. Detective Syvock also told me I was not free to walk around the apartment during the search. On that morning, I firmly believed that I was under arrest, not free to leave, and not free to refuse to answer questions. Though he told me I could leave, Detective Syvock did not tell me that I was not under an obligation to answer questions if I stayed, or that I could consult with an attorney.

8. At no point was I instructed regarding my rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), to remain silent and consult an attorney prior to answering any questions. Had I been informed of my rights, I would have invoked my right to remain silent and consult an attorney.

9. At one point between interrogations, my mother asked the officers if I was under obligation to answer their questions, and one of the officers mockingly responded, "What, are you his attorney?" The officer's response to my mother confirmed my feeling that I was not free to leave or to refuse to answer questions.

10. When the officers arrived at my house on the morning of February 5, 2015, I had not slept all night. I suffer from insomnia. The last time I had slept was on

2

February 2, from approximately 12:00 a.m. to 4:00 a.m. I had consumed alcohol several hours before to attempt to fall asleep; the consumption of the alcohol reacted poorly with me, and contributed to my gastric distress. Because of my lack of sleep, my mind felt foggy during the search and during my interrogations.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

DATED: September 16, 2015.   *Todd Hartman*
                              TODD CHRISTIAN HARTMAN

DECLARATION OF COUNSEL

I, Cuauhtemoc Ortega, declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am licensed to practice law in the State of California and I am admitted to practice in this Court. Our office has been appointed to represent Todd Christian Hartman in *United States v. Hartman,* SA CR 15-63-JLS. I make this declaration in support of Defendant's Motion to Suppress Evidence ("motion").

2. Attached as Exhibit A to the motion is a true and correct copy of a "Personnel Assignments" chart. The chart was appended to a Department of Homeland Security Enforcement Operation Plan, a document produced in discovery to the defense by the government. The redactions on the document were made by the government prior to disclosing the document to the defense; the defense did not alter the document.

3. Attached as Exhibit B is true and correct copy of a sketch of Mr. Hartman's apartment, which was prepared by law enforcement and appended to Return to Search Warrant. The documents were produced in discovery to the defense by the government. The defense has redacted the document to exclude the Hartman home address, pursuant to the Local Rules.

4. I redacted Mr. Hartman's declaration to exclude the Hartman home address, pursuant to the Local Rules. The defense will separately file an under seal unredacted copy of Mr. Hartman's declaration and Exhibit B.

5. Attached as Exhibit C are still images captured from the videotaped recording of my client's interview. The videotaped recording was produced by the government in discovery. No alterations were made to the content of the image.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

DATED: September 18, 2015.

CUAUHTEMOC ORTEGA