HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CUAUHTEMOC ORTEGA(Bar No. 257443)
(E-Mail: Cuauhtemoc_Ortega@fd.org)
ANDREA JACOBS (Bar No. 236892)
Deputy Federal Public Defender
(E-mail: Andrea_Jacobs@fd.org)
Deputy Federal Public Defenders
411 West Fourth Street, Suite 7110
Santa Ana, California  92701-4598
Telephone:  (714) 338-4500
Facsimile:  (714) 338-4520

Attorneys for Defendant
TODD CHRISTIAN HARTMAN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR 15-00063-JLS |
| Plaintiff, | |
| v. | **NOTICE OF MOTION; MOTION TO COMPEL DISCOVERY PURSUANT TO FED. R. CRIM. P. 16; EXHIBITS A-B** |
| TODD CHRISTIAN HARTMAN, | |
| Defendant. | |

**TO UNITED STATES ATTORNEY EILEEN DECKER AND ASSISTANT UNITED STATES ATTORNEY ANNE GANNON:**

PLEASE TAKE NOTICE that on October 16, 2015, at 11:30 a.m., or as soon thereafter as the matter may be heard, defendant Todd Christian Hartman, by and through his attorneys of record, Deputy Federal Public Defenders Cuauhtémoc Ortega and Andrea Jacobs, will and hereby does move for an order compelling the government to produce previously requested information regarding the computer program Peer

Spectre pursuant to Federal Rule of Criminal Procedure 16 as well as *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).  The items requested constitute documents or data material to preparing a defense against the government's case in chief at trial.  This motion is based on the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure.

Respectfully submitted,

HILARY POTASHNER
Federal Public Defender

DATED:  September 18, 2015          By   */s/ Andrea Jacobs and Cuauhtemoc Ortega*

ANDREA JACOBS
CUAUHTEMOC ORTEGA
Deputy Federal Public Defenders

2

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.**

## **INTRODUCTION**

Defendant Todd Christian Hartman is charged with two counts of distribution and one count of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(2), (b)(1) and § 2252A(a)(5)(B), (b)(2).  Pursuant to discovery previously produced, law enforcement utilized a specific computer software program, Peer Spectre, to identify an internet protocol ("IP") address that was allegedly sharing child pornography.  This IP address was later determined to be registered to Mr. Hartman's mother, Judy Hartman.  In his application for a search warrant, Detective David Syvock of the Newport Beach Police Department indicates that, using Peer Spectre, he made a direct connection with the Hartman computer and downloaded images that were child pornography.  The use of Peer Spectre to download images from the Hartman computer formed the basis of the search warrant affidavit and the ultimate search of Mr. Hartman's home, where a computer containing images of child pornography was found.  Therefore, the technology behind and use of the computer program Peer Spectre accounts for the entirety of the charges against Mr. Hartman.

On September 9, 2015, counsel for Mr. Hartman requested discovery relating to the computer program Peer Spectre from the government.  See Exhibit A.  On September 16, 2015, government counsel declined to provide the requested discovery, stating that the request was: (1) overbroad, (2) the materials sought are protected by the law enforcement privilege, and (3) the defense has not established the materiality of the materials to any defense or claim.  See Exhibit B.[1]  For the following reasons, the government's assertions fail and the Court should compel the government to disclose

---

[1] Exhibit B has been redacted to exclude information that is the subject of a protective order.

the technical specifications of the Peer Spectre program as well as an installable copy of the program.

## II.

## ARGUMENT

Rule 16 states that a criminal defendant has a right to inspect all documents, data, or tangible items within the government's "possession, custody, or control" that are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Evidence is "material" if it is "helpful" to the development of a possible defense. *United States v. Olano*, 62 F.3d 1180, 1203 (9th Cir. 1995). In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court ruled that the suppression by the prosecution of evidence favorable to the accused, upon request for disclosure by the accused, violates due process. The Supreme Court further expanded an accused's right to evidence held by the government in *Giglio v. United States*, 405 U.S. 150 (1972) to include evidence that could be used to impeach government witnesses. Pursuant to Rule 16, *Brady*, and *Giglio*, the government is required to produce the requested information regarding Peer Spectre because it is material to the development of a defense in Mr. Hartman's case and is necessary in order to effectively cross-examine Detective Syvock at trial.

**A.     Discovery of Peer Spectre is Material to Mr. Hartman's Defense**

The use of Peer Spectre to allegedly connect to files on the Hartman computer forms the specific basis for the distribution charges, or two-thirds of the indictment. Detective Syvock vaguely discusses his use of Peer Spectre in his search warrant affidavit, which led to the search of the Hartman home and the discovery of child pornography on the Hartman computer. The evidence seized from the Hartman computer supports the government's final count of the indictment, possession of child pornography. The government, presumably, must present evidence in its case in chief regarding its investigation of the underlying charges. This puts directly at issue the use of Peer Spectre to obtain access to the Hartman computer.

4

According to Detective Syvock's search warrant affidavit, he is the witness who used Peer Spectre to directly connect with the Hartman computer and download child pornography. In the search warrant affidavit Detective Syvock claims that "Peer Spectre reads the publicly available advertisement from computers that are identifying child sexual abuse images available for distribution in a consistent and reliable manner." In order to effectively cross-examine Detective Syvock on how Peer Spectre works and its reliability, Mr. Hartman must be provided access to the software and its technical specifications. Whether Mr. Hartman knowingly shared child pornography hinges on the technical specifications and reliability of this computer program.

In *United States v. Budziak*, 697 F.3d 1105 (9th Cir. 2012), the Ninth Circuit Court of Appeals overruled the district court's denial to the defendant of discovery relating to a similar FBI-run computer program in a child pornography distribution case. At issue in *Budziak* was the FBI computer program EP2P. 697 F.3d at 1107. Utilizing EP2P, two FBI agents downloaded images from an IP address registered to defendant Budziak. *Id*. EP2P was described as an enhanced version of a publicly available peer-to-peer file sharing program that allows the FBI to view all files that a particular user on the file sharing network is making available. *Id*. Based on the images downloaded using EP2P, the FBI obtained a search warrant and defendant Budziak was ultimately indicted. Defendant Budziak made several motions to compel the discovery of the technical specifications of EP2P as well as a copy of the installable software for a forensic expert to review. All of these motions were denied. At trial the government presented the testimony of the agents who testified about their investigation using EP2P. *Id*. at 1108. Defendant Budziak was found guilty at trial.

The Ninth Circuit vacated defendant Budziak's conviction and remanded the case back to the district court because defendant had made the requisite showing that such information was material to the defense of his case: "Given that the distribution charge against Buzdiak was premised on the FBI's use of the EP2P program to download files from him, it is logical to conclude that the functions of the program

5

were relevant to his defense." *Id*. at 1112. The Ninth Circuit analogized the issue to dog drug sniff cases where the defense is entitled to discovery on the narcotics detector dog because materials on the dog's qualifications are crucial to the ability to assess the dog's reliability and to conduct effective cross-examination of the dog's handler. *Id*. at 1112, *citing United States v. Cedano-Arellano*, 332 F.3d 568 (9th Cir. 2003). "Similarly, access to the EP2P software was crucial to Budziak's ability to assess the program and the testimony of the FBI agents who used it to build the case against him." *Id*. at 1112. It was not sufficient, the *Budziak* court held, that defendant had the ability to cross-examine the agent at trial because he was denied the "background material on the software that could have enabled him to pursue a more effective examination." *Id*. Citing the Third and Second Circuits, the Ninth Circuit emphasized that "a party seeking to impeach the reliability of computer evidence should have sufficient opportunity to ascertain by pretrial discovery whether both the machine and those who supply it with data input and information have performed their tasks accurately." *Id*., *citing United States v. Liebert*, 519 F.2d 542, 547-48 (3d Cir. 1975), *United States v. Dioguardi*, 428 F.2d 1033, 1038 (2d Cir. 1970)("It is quite incomprehensible that the prosecution should tender a witness to state the results of a computer's operations without having the program available for defense scrutiny and use on cross-examination if desired.").

Mr. Hartman's case is exactly on par with *Budziak*. In order to assess the reliability of Peer Spectre and effectively cross-examine the witness who used Peer Spectre to download files from the Hartman computer, the defense must have access to this program. This is especially crucial when the charges "against the defendant [are] predicated largely on computer software functioning in the manner described by the government, and the government is the only party with access to that software." *Budziak* at 1113. Detective Syvock's use of Peer Spectre has put the software directly at issue. Thus, the fact that Mr. Hartman's charges arise out of the Peer Spectre investigation makes access to this software material to the defense of this case.

6

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**B.     The Requested Material is not Protected by the *Qualified* Law Enforcement Privilege**

The government improperly relies on the *qualified* law enforcement privilege to skirt its discovery obligations under Rule 16, *Brady*, and *Giglio*.  The government has not asserted why the law enforcement privilege applies in this case.  If the government can show a legitimate reason for asserting the privilege, the requested information must still be turned over to Mr. Hartman.  The law enforcement privilege is a qualified, or limited, privilege.  "Even sensitive law enforcement information must be disclosed if it is needed for an effective defense."  *See United States v. Rigmaiden*, 844 F. Supp. 2d 982, 988 (D. Arizona 2012).  The law enforcement privilege was addressed in *Roviaro v. United States*, 353 U.S. 53 (1957), when the Supreme Court ruled that the district court committed reversible error when it allowed the government to refuse to disclose the identity of an undercover informant.  The Supreme Court stated that a "limitation on the applicability of the privilege arises from fundamental requirements of fairness. Where the disclosure of an informer's identity, or the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  *Roviaro*, 353 U.S. at 60-61.  The Court must "balance the public interest in protecting the flow of information against the individual's right to prepare his defense."  *Id*. at 62.

Mr. Hartman's right to defend the serious charges levied against him trumps any potential law enforcement privilege.  Moreover, any order for disclosure can include appropriate protective measures that would limit the conditions under which the Peer Spectre software is reviewed, and would prohibit dissemination of potential proprietary information beyond the confines of the immediate legal proceedings involving Mr.

7

Hartman.  Mr. Hartman has already stipulated to a protective order regarding other sensitive information in this case.[2]

## C.    Mr. Hartman's Request is Not Overbroad

The government states that Mr. Hartman's request is overbroad.  To the contrary, Mr. Hartman's request is simple, specific and direct.  Similar to the defendant in *Buzdiak*, Mr. Hartman is straightforwardly requesting disclosure of a copy of the Peer Spectre program and its technical specifications:

> (1) An installable copy of the Peer Spectre program used by Detective Syvock of the Newport Beach Police Department, as described in his Affidavit in Support of a Search Warrant dated February 3, 2015.
>
> (2) All documents in the government's possession, custody, or control regarding Peer Spectre, including documents regarding the program's technical specifications.
>
> (3) All documents and records in the government's possession, custody or control regarding any other software, computer programs, or the like, used by Detective Syvock during his investigation of Mr. Hartman.

There is nothing overbroad about this request.  This discovery request is a follow-up to previously produced discovery wherein Detective Syvock discusses his investigation of Mr. Hartman and the use of Peer Spectre.  It is natural and necessary for Mr. Hartman to request more information on the software that Detective Syvock, and the government, have placed at issue.

//

//

//

---

[2] Mr. Hartman reserves the right to supplement his argument against the government's assertion of a "law enforcement privilege," once the government explains how it has standing to assert the privilege and why it believes the software program falls within the privilege.

# III.

## <u>CONCLUSION</u>

For the foregoing reasons, and pursuant to Rule 16, *Brady* and *Giglio*, Mr. Hartman respectfully requests that the Court compel the government to produce the requested discovery as it is material to his defense.