EILEEN M. DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
ANNE C. GANNON (Cal. Bar No. 214198)
Assistant United States Attorney
    United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92627
    Telephone: (714) 338-3548
    Facsimile: (714) 338-3561
    E-mail:    anne.gannon@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. SA CR 15-63(A)-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY |
| v. | |
| TODD CHRISTIAN HARTMAN, | MOTION HEARING: 10/16/2015 |
| | 11:00 a.m. |
| Defendant. | ESTIMATE: 20 minutes |

The government files its opposition to defendant's motion to compel discovery pursuant to Federal Rule of Criminal Procedure 16.

Dated: September 24, 2015    Respectfully submitted,

    EILEEN M. DECKER
    United States Attorney

    DENNISE D. WILLETT
    Assistant United States Attorney
    Chief, Santa Ana Branch Office


      /s/
    ANNE C. GANNON
    Assistant United States Attorney

    Attorneys for Respondent
    UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Law enforcement agencies have designed various technologies and software to aid in their investigations of child pornography possession and trafficking offenses. Peer Spectre is one such investigatory tool. For the most part, technologies like Peer Spectre are designed to function like publicly-available, share-file programs that child pornography perpetrators use to commit their crimes. However, the law enforcement software has been tailored to provide specific information about perpetrators that can be used to identify and apprehend them.

On September 18, 2015, defendant Todd Christian Hartman ("defendant") filed a motion to compel extensive discovery relating to Peer Spectre, including its specifications and a copy of the software itself (the "requested information"). Defendant contends that Peer Spectre was used to download images from defendant's computer that formed the basis for the search warrant affidavit and search of defendant's home. (Def. Mot. at 3.)[1] As described below, defendant's motion should be denied because A) the requested materials are protected by a qualified law enforcement privilege; B) he has not established that the requested information is material to his defense; and C) his request is overbroad.

---

[1] While Peer Spectre was used in this investigation, it served a different function. Peer Spectre reads publically available information about which Internet Protocol ("IP") addresses are offering child sexual abuse images online. A different program, Shareaza LE, is used to actually download the publicly available images and videos from a single user once Peer Spectre identifies the IP address.

1

1 **II. STATEMENT OF FACTS**

2     Defendant is charged with one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and two counts of transportation of child pornography, in violation of 18 U.S.C. § 2252A(a)(1). The transportation of child pornography counts are based on Newport Beach Police Department Detective David Syvock downloading child pornography videos from an Internet Protocol address that resolved back to defendant's residence.

    The government has produced materials relating to defendant's case during the course of discovery, including a description in the search warrant affidavit of how Peer Spectre works and Detective Syvock's reports. In addition, the government recently disclosed 63 digital files related to the downloading of the charged videos via the Shareaza LE program..

    On September 9, 2015, defendant requested the following materials, which are the subject of the instant motion to compel:

1. An installable copy of the Peer Spectre program used by Detective David Syvock of the Newport Beach Police Department, as described in his Affidavit in Support of Search Warrant dated February 3, 2015. If difference versions of the program exist, please provide a copy of the version used by Detective Syvock during his investigation of [defendant].

2. All documents in the government's possession, custody, or control – and in the possession, custody, or control of other law enforcement agencies involved with this investigation, including the Newport Beach Police Department - regarding Peer Spectre, including documents regarding the program's technical specifications.

3. All documents and records in the government's possession, custody or control – and in the possession, custody or control of other law enforcement agencies involved in this investigation, including the Newport Beach Police Department – regarding any other software, computer programs, or the like, used by Detective Syvock during this investigation of [defendant].

2

(Def.'s Mot. at Ex. A.) The government responded to defendant's request on September 16, 2015. (Def.'s Mot. at Ex. B.)

**III. ARGUMENT**

Defendant is not entitled to the requested materials because A) the requested materials are protected by a qualified law enforcement privilege; B) he has not established that the requested information is material to his defense; and C) his request is overbroad. The government has complied, and will continue to comply, with its discovery obligations and defendant's motion should be denied.

**A. PEER SPECTRE IS A SENSITIVE LAW ENFORCEMENT INVESTIGATORY TOOL PROTECTED BY A QUALIFIED PRIVILEGE**

Sensitive, investigatory techniques should not be subject to discovery without a showing of particular need.[2] In this regard, courts have long recognized a qualified law enforcement privilege.[3]

The Supreme Court first recognized a qualified law enforcement privilege in the context of the government's ability to withhold the identity of informants. Roviaro v. United States, 353 U.S. 53 (1957). Numerous circuits have extended Roviaro to other sensitive law enforcement investigative techniques, particularly relating to electronic surveillance. In United States v. Van Horn, the Eleventh Circuit outlined the rationale for such an expansion of the qualified law enforcement privilege:

> Disclosing the precise locations where surveillance devices are hidden or their precise specifications will educate criminals regarding how to protect themselves against

---

[2] The standard for showing a particular need is addressed in Part II.B. below.

[3] Claims of privilege are governed by common law. Fed. R. Evid. 501.

3

> police surveillance. Electronic surveillance is an important tool of law enforcement, and its effectiveness should not be unnecessarily compromised. Disclosure of such information will also educate persons on how to employ such techniques themselves . . . .

789 F.2d 1492, 1508 (1986). See also United States v. Green, 670 F.2d 1148, 1155 (D.C. Cir. 1981) ("[P]olicy justifications analogous to those underlying the well-established informer's privilege support a qualified privilege protecting police surveillance locations from disclosure."); United States v. Crumley, 565 F.2d 945, 950 (5th Cir. 1978) (holding that the government need not disclose the location of "track sheets" [computer printouts listing all parts, including identification numbers, used in the assemblage of a vehicle] because "they are valuable tools used by law enforcement officers in discovering and solving motor vehicle thefts"); *accord* United States v. Cintolo, 818 F.2d 980 (1st Cir. 1987) (upholding limitations the district court placed on defendant's cross-examination of agent regarding electronic surveillance techniques); United States v. Gazie, 786 F.2d 1166, at *8 (6th Cir. 1986) (limiting cross-examination regarding the type and location of electronic microphone surveillance, despite defendant's desire to use the information to claim the voices were distorted).

    Courts within the Ninth Circuit have also applied Roviaro to other sensitive law enforcement investigative techniques. See United States v. Rigmaiden, 844 F. Supp. 2d 982, 999 (D. Ariz. 2012) (holding that "real time and historical geolocation techniques" and "radio wave collection methods" used by the government were "subject to the Roviaro privilege" because disclosure "would hamper future law

4

enforcement efforts by enabling adversaries of law enforcement to evade detection"); see also United States v. Diaz, No. 2:13-CR-00148-JAD, 2014 WL 1668600, at *2–*3 (D. Nev. Apr. 25, 2014) (noting that "[p]ersuasive authority from other circuits has extended Rovario to recognize 'a qualified government privilege not to disclose sensitive investigative techniques,' provided the exclusion of such techniques does not unduly prejudice the defense" and therefore granting the government's motion in limine to preclude questioning regarding the specifics of a recording device) (quoting Van Horn, 789 F.2d at 1507).  Cf. United States v. Budziak, 697 F.3d 1105, 1113 (9th Cir. 2012) (recognizing that "law enforcement confidentiality concerns" may play a role in disclosure on remand); United States v. Mahon, No. CR09-0712 PHX-DGC, 2011 WL 5006737, at *5 (D. Ariz. Oct. 20, 2011) (stating that because "[c]ourts have applied the Rovario qualified privilege to the location and composition of electronic surveillance information," if "disclosure of [wireless transmitter, electret microphone, and wireless receivers] would compromise sensitive law enforcement information," the court would engage in a Rovario analysis).

The qualified law enforcement privilege has been applied specifically to child pornography cases.  In United States v. Pirosko, the defendant sought to compel investigative software similar to Peer Spectre.  See 787 F.3d 358, 363–64 (6th Cir. 2015). The Sixth Circuit found persuasive the government's argument that granting the motion to compel "would compromise the integrity of its surveillance system and would frustrate future surveillance efforts" and, therefore, upheld denial of the motion.  See id. at 365–67.

5

Further, in United States v. Chiaradio, the First Circuit recognized that "the source code [for EP2P, an FBI investigatory tool for child pornography cases,] is purposely kept secret because the government reasonably fears that traders of child pornography (a notoriously computer-literate group) otherwise would be able to use the source code to develop ways either to evade apprehension or to mislead the authorities." 684 F.3d 265, 278 (2012).

The confidentiality concerns in this case are the same as those expressed in Pirosko, Chiaradio, and the many other surveillance technology privilege cases cited above. Permitting disclosure of a copy of Peer Spectre or its specifications, and similar software, would give defendant an insider's perspective of how the software works, thereby educating him (and other child pornography perpetrators) on how to avoid detection by Peer Spectre in the future. As Chiaradio notes, child pornography perpetrators are "a notoriously computer-literate group." 684 F.3d at 278. Indeed, this fact makes the concerns of disclosing technology specifications even higher in child pornography cases than in cases of video and microphone surveillance, such as Van Horn, where the qualified law enforcement privilege has also been upheld.

### B. DEFENDANT HAS NOT ESTABLISHED THAT THE REQUESTED INFORMATION IS MATERIAL TO HIS DEFENSE

Because a qualified law enforcement privilege exists for the requested information, "[t]he burden of proof is on the defendant[] to show need for the disclosure." United States v. Sai Keung Wong, 886 F.2d 252, 256 (9th Cir. 1989). The defendant must first make a threshold showing of materiality, based on more than "speculation" or "suspicion," that the disclosure would be relevant to his case. See

1 United States v. Ibarra, 581 F. Appx. 687, 689 (9th Cir. 2014). As
2 the Ninth Circuit noted in United States v. Budziak, "conclusory
3 allegations of materiality [will not] suffice.'" 697 F.3d 1105, 1111
4 (9th Cir. 2012) (quoting United States v. Mandel, 914 F.2d 1215, 1219
5 (9th Cir. 19990).[4]

If the defendant fails to make this threshold showing of materiality, the motion to compel must be denied. See Ibarra, 581 F. Appx. at 689 (upholding the district court's denial of defendant's motion for in camera review of an informant's file or to disclose the identity of the informant because the defendant "provided only speculation and suspicion" that the information "would be 'relevant' or 'helpful' to any defense"). Only when the defendant has made this threshold showing of materiality should the court proceed to "balance 1) the extent to which disclosure would be relevant and helpful to the defendant's case, and 2) the government's interest in protecting" the sensitive information. United States v. Spires, 3 F.3d 1234, 1238 (9th Cir. 1993); see also Roviaro, 353 U.S. at 62 (noting that the court must consider "the public interest in protecting the flow of information against the individual's right to prepare his defense"). If the threshold showing is made, an ex parte, in camera hearing of the requested information will be held to aid the court in

---

[4] Here, the standard for materiality is the same as in Federal Rule of Criminal Procedure 16. *Compare* United States v. Ibarra, 581 F. Appx. 687, 689 (9th Cir. 2014) (stating the standard for threshold materiality in the law enforcement privilege context as whether the discovery "would be 'relevant' or 'helpful' to any defense), *with* United States v. Doe, 705 F.3d 1134, 1151 (9th Cir. 2013) (stating the standard for Rule 16 materiality as whether the discovery "would . . . have been helpful to [the] defense"). Therefore, if defendant has not met the qualified law enforcement privilege threshold for materiality, he also has not met the Rule 16 standard.

balancing the parties' interests. <u>United States v. Salazar</u>, 598 F. Appx. 490, 493 (9th Cir. 2015).

First, defendant has not made the requisite threshold showing of materiality. Defendant mistakenly relies on <u>United States v. Budziak</u> to support his claim of materiality. (Def.'s Mot. at 5-6.) In <u>Budziak</u>, the court held that discovery of law enforcement software was material to his defense when the defendant's motions to compel had included evidence "suggesting that the FBI may have only downloaded fragments of child pornography files[,] . . . making it 'more likely' that he did not knowingly distribute any complete child pornography files." 697 F.3d at 1112. The defendant also "submitted evidence suggesting that the FBI agents could have used the . . . software to override his sharing settings." <u>Id.</u> Indeed, the defendant presented testimony of a computer forensics expert stating what additional information could be uncovered through inspection of the software and be helpful to his defense. <u>Id.</u> The <u>Budziak</u> court noted that unlike in <u>Chiaradio</u>, where "the defendant 'neither contradicted nor cast the slightest doubt upon' the government's testimony [regarding] the materials it had already provided to him[,] . . . Budzik presented <u>arguments and evidence</u> suggesting that the materials disclosed by the FBI did not resolve all questions relevant to his defense." <u>Id.</u> at 1112 n.1 (quoting <u>Chiaradio</u>, 684 F.3d at 277) (emphasis added). Because the evidence submitted by the <u>Budziak</u> defendant demonstrated precisely how the requested information would be helpful to his specific defenses, the court held the discovery material. <u>Id.</u> at 1112-13.

This case is like <u>Chiaradio</u>, not <u>Budziak</u>. Defendant makes two

8

1  "conclusory allegations of materiality" for the requested
2  information: that whether he "knowingly shared child pornography
3  hinges on the technical specifications and reliability of this
4  computer program;" and that information regarding "how Peer Spectre
5  works and its reliability" is necessary for cross-examining Detective
6  Syvock.  (Def.'s Mot. at 5.)  Here, defendant fails to provide any
7  detail as to how Peer Spectre's technical specifications could help a
8  specific defense.  Whereas the Budziak defendant "identified specific
9  defenses to the distribution charge that discovery on the [law
10 enforcement] program could potentially help him develop," 697 F.3d at
11 1112, defendant can offer no explanation for how the requested
12 information could rebut his distribution charges.  See also Pirosko,
13 787 F.3d at 365 (distinguishing Budziak on the fact that the Budziak
14 defendant had "presented evidence," including expert testimony, of
15 how the discovery would help two specific defense claims and noting
16 that "it is important for the defendant to produce some evidence of
17 government wrongdoing").
18     Just as in Budziak, the government has provided defendant with a
19 description of how Peer Spectre works.  In Budziak, however, the
20 defendant's charge was "predicated largely on computer software
21 functioning in the manner described by the government." 697 F.3d at
22 1113.  That is not precisely the case here.  The government's case is
23 also based on the same files being found on defendant's computer
24 after it had been seized.  Because defendant's case is distinct from
25 Budziak in this significant regard, defendant cannot present the
26 types of evidence regarding his need for the information that were
27 persuasive to the Budziak court.
28

9

Even if defendant could satisfy the requisite threshold showing of materiality, he would not be entitled to the requested information. The public interests in limiting disclosure of Peer Spectre's specification information are vast, as outlined in Part III.A. above, and outweigh any relevance defendant could allege to his case.[5]

### C. DEFENDANT'S REQUEST IS OVERBROAD

Defendant requests "[a]ll documents . . . regarding Peer Spectre." Defendant does not attempt to describe the types of information or documents sought regarding Peer Spectre, nor does he limit the request to documents regarding his case. It would be incredibly burdensome for the government to gather every document it has regarding Peer Spectre, not to mention the immateriality and confidentiality concerns that would arise with respect to Peer Spectre documents for other defendants. Because defendant's request is unreasonable and overbroad, his motion should be denied.

### IV. CONCLUSION

For the foregoing reasons, defendant's motion to compel should be denied.

---

[5] Because defendant has provided no indication of how the requested information is material to his defense, the government cannot presently make a specific argument regarding the balancing of interests required by Roviaro and Spires. The government reserves the right to supplement this argument.

10