HILARY POTASHNER (Bar No. 167060)
Federal Public Defender
CUAUHTEMOC ORTEGA (Bar No. 257443)
(E-Mail: cuauhtemoc_ortega@fd.org)
ANDREA JACOBS (Bar No. 236892)
andrea_jacobs@fd.org
Deputy Federal Public Defenders
411 West Fourth Street, Suite 7110
Santa Ana, California  92701-4598
Telephone:  (714) 338-4500
Facsimile:  (714) 338-4520

Attorneys for Defendant
TODD CHRISTIAN HARTMAN

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>   v.<br><br>TODD CHRISTIAN HARTMAN,<br><br>   Defendant. | Case No. SA CR 15-00063-JLS<br><br>**SUMMATION BRIEF RE MOTION TO COMPEL DISCOVERY PURSUANT TO FED. R. CRIM. P. 16; EXHIBITS A-E** |

Defendant Todd Christian Hartman files his summation brief in support of his motion to compel discovery of the law enforcement software Peer Spectre and Shareaza LE pursuant to Fed. R. Crim. P. 16.

                                                  Respectfully submitted,

                                                  HILARY POTASHNER
                                                  Federal Public Defender

DATED:  November 6, 2015      By  */s/ Andrea Jacobs & Cuauhtémoc Ortega*
                                                     Andrea Jacobs & Cuauhtémoc Ortega
                                                     Deputy Federal Public Defenders

# SUMMATION BRIEF

## I.

## INTRODUCTION

[C]riminal defendants should not have to rely solely on the government's word that further discovery is unnecessary. This is especially so where, as here, a charge against the defendant is predicated largely on computer software functioning in the manner described by the government, and the government is the only party with access to that software.

*United States v. Budziak*, 697 F.3d 1105, 1113 (9th Cir. 2012).

In support of his discovery request for an installable copy of Peer Spectre and Shareaza LE (collectively "the law enforcement software"), Mr. Hartman submitted the affidavit of forensic expert Tami Loehrs. The crux of Ms. Loehrs' forensic findings is that of the six files identified and downloaded by the law enforcement software prior to obtaining a search warrant, four were not publicly available for sharing on the Hartman computer.[1] *See* Affidavit of Tami Loehrs ("Loehrs Affidavit") ¶ 14.[2] The other two files were publicly available but had not been shared since May 2014, *six months prior* to the law enforcement software being used to access the Hartman computer. *Id.*

The government was unable to rebut Ms. Loehrs' forensic findings, either through cross-examination or by calling its own forensic expert. Thus, Mr. Hartman remains in the dark about how the law enforcement software was able to access files on his computer that were not publicly available for sharing or that had not been shared

---

[1] The six files were purportedly downloaded by Detective David Syvock, as detailed in his affidavit submitted to obtain the search warrant in this case. The affidavit is included with Exhibit A to the Government's Supplemental Briefing Opposing Defendant's Motion to Compel Discovery (hereinafter "Government's Supplemental Briefing"). (Docket No. 59).

[2] The affidavit is appended to Supplement in Support of Motion to Compel Discovery Pursuant to Fed. R. Crim. P. 16 (Docket No. 50).

since May 2014.  The government has presented no evidence that Peer Spectre and Shareaza LE cannot search beyond publicly available files.

Pursuant to the Court's request, counsel for Mr. Hartman and the government conferred regarding the government's offer to "demonstrate the software to the defense."  *See* Reporter's Transcript of Proceedings for October 27, 2015 ("RT") at 66, attached hereto as Exhibit A.  Based on the issues raised by Ms. Loehrs' forensic examination, counsel for Mr. Hartman informed the government that a software demonstration would need to show how Peer Spectre and Shareaza LE are coded to navigate files on a suspect's computer in order to determine whether or not these programs can access non-shared files.  After asking the government if this type of demonstration was possible, counsel for Mr. Hartman did not hear back from the government.  *See* Exhibit B (email correspondence).

The issues raised by Mr. Hartman's discovery request implicate the two transportation charges against him, as the Court acknowledged at the hearing, Ex. A, RT at 69, but they also raise important Fourth Amendment concerns regarding Mr. Hartman's expectation of privacy in files not available for others to access on his computer.[3]  In order to assess this issue, and so that Mr. Hartman can effectively prepare and present his defense, the defense needs access to the law enforcement software.  Otherwise, Mr. Hartman is forced to blindly accept that the "computer software [is] functioning in the manner described by the government, and the government is the only party with access to that software." *Budziak*, 697 F.3d at 1113.

//
//
//

---

[3] If upon review of the law enforcement software it turns out that it can and did access files beyond those publicly available for sharing, Mr. Hartman reserves the right to file a second suppression motion, as the totality of the evidence against him could have been obtained through an unlawful search of his computer.

## II.

## ARGUMENT

**A. The Scope of Mr. Hartman's Discovery Request is Clear, Narrow and Material to his Defense**

Although the government has argued in its papers and at the hearing that Mr. Hartman's request is overbroad and lacks clarity, Ex. A, RT at 66, in actuality the issue at hand is a narrow one: Peer Spectre and Shareaza LE accessed four publicly unavailable files on Mr. Hartman's computer and two publicly available files that had not been shared since May 2014. It is, therefore, necessary to allow Mr. Hartman to have access to a copy of Peer Spectre and Shareaza LE so that he can test the software and determine if it can download files that are not publicly shared. This goes to the heart of the transportation charges, which require proof beyond a reasonable doubt that Mr. Hartman "knowingly transported" child pornography. 18 U.S.C. § 2252A(a)(1).

The government attempted in cross examination to distinguish this case from others where courts have granted defendants some relief in response to motions to compel disclosure of the same or similar law enforcement software. In her affidavit, Ms. Loehrs cited to two such cases, *United States v. Crowe*, 11-CR-1690-MV (D. New Mexico) and *United States v. Ocasio*, 11-CR-2728-KC (W.D. Texas). The government pointed out in cross examination that in those two cases, the child pornography purportedly downloaded by law enforcement was *not* ultimately found by Ms. Loehrs on the suspects' computers. Ex. A, RT 13-14. In this case, the child pornography was found on the Hartman computer after it was seized. *Id.* As an initial matter, it was the opinion of Ms. Loehrs, who was the defense expert in *Crowe*, that Mr. Hartman's case is actually similar to *Crowe* because in both cases she was able to find the relevant file names on the defendants' computers but the file paths "indicated they weren't being shared." *See* Ex. A, RT at 40-41:6.

More importantly, however, the government's argument misses the point of Mr. Hartman's motion entirely. It does not matter that the six files may have been found on

the Hartman computer because the issue is that the law enforcement software is potentially searching beyond shared folders by accessing files that are not being made publicly available for distribution on the peer-to-peer file sharing network. Again, if the law enforcement software can access files that are not publicly available, Mr. Hartman cannot be said to have knowingly transported these files to Detective Syvock on October 16, 2014 and December 29, 2014, as alleged in the Indictment.

The government opted to produce no evidence that the law enforcement software at issue is coded to prevent it from accessing other than publicly shared files. It has already noticed a forensics expert to the defense--David McCain, who is the subject of a different motion (Docket 51)--and who, one would expect, has reviewed the forensic evidence at issue in this matter. The inference then is that the government cannot rebut Ms. Loehrs' findings regarding the 6 child pornography files. Therefore, disclosure of the software to the defense is necessary. The defense has offered to mitigate the government's concerns about disclosing the software by agreeing to a protective order and by committing to returning the software at the end of the case, but the government has not been receptive to these suggestions. Exhibit B.

**B.    Evidence Regarding Shareaza LE Summary Reports**

The Court heard testimony regarding Shareaza LE summary reports. Ex. A, RT at 45. Prior to the hearing, these reports were filed as Exhibit B to the Government's Supplemental Briefing. Excerpts of the reports were also received as defense exhibits J and K at the hearing.

Mr. Hartman elicited testimony regarding these reports at the hearing because the government produced the reports in response to Mr. Hartman's initial discovery request regarding Peer Spectre. After Mr. Hartman made this request, counsel for Mr. Hartman were told *for the first time* that Shareaza LE was used in conjunction with Peer Spectre in this case. This information was nowhere in the discovery; Detective Syvock did not even mention Shareaza LE in his search warrant affidavit to the magistrate or in his investigation report.

The Shareaza LE summary reports relate to the two IP addresses assigned to Judy Hartman, Mr. Hartman's mother. The government claims these reports "detail[] how the files containing child pornography were downloaded from the computer." *See* Exhibit B to Government's Supplemental Briefing at p. 2. This is not accurate. In fact, the Shareaza LE reports raise additional questions and irregularities that the government has no explanation for.

First, the Shareaza LE summary report does not show where in the Hartman computer the files containing child pornography were found; i.e. whether they were in files available for sharing on a peer-to-peer network. Second, the summary report contains inaccurate information, which goes to the issue of whether Shareaza LE can be considered reliable. Exhibit J identifies itself as Shareaza LE Summary Report for IP: 76.172.3.11. This IP address was registered to Judy Hartman in May 2011. Ex. A, RT at 47:5; *see also* Exhibit C (Time Warner Cable records produced to the defense showing the internet service activation date for the Hartman home). In the first paragraph of the report it incorrectly states that "[t]his IP has been observed in CPS between the dates *12/23/2009* @ 2:23:19 AM and *11/6/2014* @ 8:55:25 PM advertising unique files (102 Child Notable / Child Erotic / Child Other / 38 Unknown Content). *See* Defense Hearing Exhibit J; *see also* Shareaza LE Summary Reports, Exhibit B to Government's Supplemental Briefing at 30. The problem with this is that CPS[4] did not access the Hartman IP address until October 16, 2014. *See* Search Warrant Affidavit, Exhibit A to Government's Supplemental Briefing, at p. 17-18. Importantly, the Shareaza LE summary report indicates that it was monitoring the Hartman IP address (on 12/23/2009) before that IP address was ever assigned to Judy Hartman (in May 2011) by Time Warner Cable. Exhibit C. The government tried to suggest that the 2009 date was when the CPS software became operational instead of Shareaza LE

---

[4] CPS, or Child Protective System, is the suite of law enforcement software that contains Peer Spectre and Shareaza LE.

providing unreliable information.  *See* Ex. A, RT at 63.  This is not the case because there are Shareaza LE summary reports for a second IP address that was assigned to Judy Hartman in November 2014.  *See* Shareaza LE Summary Reports, Exhibit B to Government's Supplemental Briefing, at p. 34.  This Shareaza LE summary report states that IP address 76.171.211.243 "has been observed in CPS between the dates 11/18/2014 @ 12:32:07 AM and 12/31/2014 @ 2:17:56 AM."  *Id*.  Therefore, the date 12/23/2009 provided in the Shareaza LE summary report cannot be the date that CPS became operational as suggested by the government.  Instead, Shareaza LE provided incorrect information.

   The final issue in Mr. Hartman's case that supports Ms. Loehrs' opinion that the law enforcement software needs to be tested by an independent third-party to determine its functionality and accuracy is the inconsistency in the dates Detective Syvock states he used the software and the dates the Shareaza LE report shows that the files were downloaded.  *See* Loehrs Affidavit ¶¶ 6, 7, 17.  In both the search warrant application and his investigation report, Detective Syvock attests that he used Peer Spectre to connect with the Hartman computer and downloaded 5 files on October 16, 2014.  *See* Search Warrant Affidavit, Exhibit A to Government's Supplemental Briefing, at p. 18. The Shareaza LE summary reports, however, state that these 5 files had varying download dates: 10/16/2014, 11/6/2014, 11/7/2014, and 11/11/2014.  *See* Shareaza LE Summary Report, Exhibit B to Government's Supplemental Briefing, at p. 31-33.  This raises concerns about whether the software accesses a user's computer to download files without the presence of a law enforcement officer operating the software.  If Detective Syvock utilized Peer Spectre and Shareaza LE on October 16, 2014 to download 5 files, why wouldn't the Shareaza LE report show that downloads of these files were initiated on that same date instead of weeks later, i.e. on November 6th, 7th, and 11th?

   For all of these reasons it is material to Mr. Hartman's case that he is allowed a copy of the law enforcement software that accessed his computer so that he may have it

7

tested by an independent third party. Both the forensic evaluation conducted by Ms. Loehrs and the government's own discovery raise concerns and unresolved questions about the functionality and reliability of Peer Spectre and Shareaza LE. These issues go to the essence of the transportation charges and raise Fourth Amendment concerns.

### C. Independent Third Party Testing of Peer Spectre and Shareaza LE is Necessary

At the heart of recent cases involving the government's use of law enforcement software to search IP addresses sharing child pornography, including *Budziak*, *Crowe*, and *Ocasio*, is the issue of whether the software has the ability to access files that are not in shared folders, deleted files, or files that are simply not on the defendant's computer. It is important to allow independent third party testing not only for Mr. Hartman but for potential future defendants impacted by the unreliability of this law enforcement software. None of the parties here want citizens' rights to be violated; however, this law enforcement software has never been independently tested, unlike other software regularly used by the government such as EnCase. Ex. A, RT at 42-44. If Peer Spectre and Shareaza LE are not reviewed in this case, what if months or years from now it is tested in a different case and found to not work as law enforcement says it does? What if Peer Spectre and Shareaza LE do access files that are not publicly available, or files that were deleted? How many cases would have to be revisited because unreliable software may have led to the defendant's conviction? It seems that the answer to these questions should be of interest to the government as well.

In *Buzdiak*, the Ninth Circuit found that the district court should have granted defendant Budziak's discovery request for a copy of the FBI law enforcement software EP2P. 697 F.3d 1105, 1112-13. On remand, the district court issued an order compelling the government to produce the EP2P software used in its investigation of defendant Budziak in both executable and source code format pursuant to a protective order. *See* Exhibit D. The government was unable to comply with the court's order with respect to the EP2P source code. *Id.* As a result, the government moved to

dismiss the two distribution charges against defendant Budziak and he was sentenced to time-served on the remaining count of possession of child pornography. *See* Exhibit E.

It is not an untenable claim that computer software can go beyond what is intended by law enforcement. In Mr. Hartman's case, like in *Budziak* and *Crowe*, a preliminary showing has been made by a forensic expert that there are problems with Peer Spectre and Shareaza LE that go to the operation of the software and affect its reliability. It is therefore material to Mr. Hartman's case that he be provided with the law enforcement software to have it independently tested to resolve the discrepancies and unanswered questions.

## III.
## CONCLUSION

For the foregoing reasons, Mr. Hartman respectfully requests that the Court compel the government to produce the requested discovery as it is material to his case.