EILEEN M. DECKER
United States Attorney
DENNISE D. WILLETT
Assistant United States Attorney
Chief, Santa Ana Branch Office
ANNE C. GANNON (Cal. Bar No. 214198)
Assistant United States Attorney
        United States Courthouse
        411 West Fourth Street
        Santa Ana, California 92627
        Telephone: (714) 338-3548
        E-mail:    anne.gannon@usdoj.gov

Attorneys for Respondent
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No.  SA CR 15-63(A)-JLS |
|---|---|
| Plaintiff, | GOVERNMENT'S POST-HEARING SUPPLEMENTAL BRIEFING OPPOSING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE AND COMPEL DISCOVERY |
| v. | |
| TODD CHRISTIAN HARTMAN, | |
| Defendant. | |

The government files its court-authorized, post-hearing supplemental briefing to its opposition to defendant's motion to suppress evidence and motion to compel discovery pursuant to Federal Rule of Criminal Procedure 16.

Dated: November 6, 2015      Respectfully submitted,

                             EILEEN M. DECKER
                             United States Attorney

                             DENNISE D. WILLETT
                             Assistant United States Attorney
                             Chief, Santa Ana Branch Office

                                  /s/
                             ANNE C. GANNON
                             Assistant United States Attorney

                             Attorneys for Respondent
                             UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

A. <u>Motion to Suppress Evidence</u>

On September 18, 2015, defendant Todd Christian Hartman ("defendant") filed a motion to suppress arguing that all evidence of statements made by defendant, and evidence derived from those statements, be suppressed because they were obtained in violation of <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).  On September 24, 2015, the government filed its opposition.  On October 2, 2015, defendant filed a reply brief.  On October 27 and 28, 2015, the Court held an evidentiary hearing, including testimony from several witnesses.

B. <u>Motion to Compel Discovery</u>

On September 18, 2015, defendant filed a motion to compel extensive discovery relating to Peer Spectre, including its specifications and a copy of the software itself.  On September 24, 2015, the government filed it opposition.  On October 2, 2015, defendant filed a reply brief and on October 8, 2015, defendant supplemented its reply with a declaration from Tami L. Loehrs.  On October 16, 2015, the Court continued the motions hearing to October 27, 2015, in part, to provide the government with an opportunity to submit a written response to Ms. Loehrs' declaration.  On October 23, 2015, the government filed supplemental briefing and exhibits.  At the evidentiary hearing on October 27, 2015, the Court heard testimony from Ms. Loehrs.  After the government proposed that a demonstration could resolve any specific concerns raised by the defense, the Court ordered the parties to meet and confer by November 3, 2015 to determine whether the matter could be resolved through

1   such a demonstration by the government.[1]  If the parties were unable
2   to reach a resolution, the Court authorized the parties to file
3   supplemental briefing by November 6, 2015.

4   **II.   STATEMENT OF FACTS**

5        A.  Evidentiary Hearing on Motion to Suppress Evidence

6        On October 27, 2015, the Court heard the testimony of
7   defendant's neighbors, Philip Mainokfi and Kurtis Klocke.  On October
8   28, 2015, the hearing continued with the testimony of government
9   witnesses' Detective ("Det.") Syvock, Newport Beach Police
10  Department, and Department of Homeland Security ("DHS") Special Agent
11  ("SA") Kim Speakman, and defense witnesses Theresa Bard, Orange
12  County Sheriff's Department, and defendant.  The government ordered
13  the transcripts for these witnesses on a 14-day timeframe and, to
14  date, has not received them.  As a result, the facts stated in the
15  argument section of this brief are based on the government's notes
16  and counsel's recollection.

17       B.  Evidentiary Hearing on Motion to Compel Discovery

18       Ms. Loehrs testified at the evidentiary hearing concerning her
19  affidavit submitted in support of defendant's motion to compel
20  discovery.  Ms. Loehrs testified that it was her "thought" that the
21  software used by law enforcement to download child pornography images
22  from defendant went beyond what was "publicly available information."
23  (RT 10/27/15: 12).  She testified that she has submitted declarations
24  in "numerous cases" where she has had concerns about the software.
25  (Id.)  Ms. Loehrs conceded that in the two cases she cited in her

26  ─────────────────────
27       [1] The parties conferred in an attempt to resolve this motion
    through a government demonstration of the software designed to
    address a specific concern.  Defendant is maintaining his original
28  request, including a copy of the software, therefore, no
    demonstration occurred.

affidavit in support of her position, the child pornography images downloaded by law enforcement using the software were not found on the suspects' computers. (RT 10/27/15: 13-14, 59-60.) She admitted that, in this case, the downloaded child pornography images were found on defendant's computer. (Id.)

Ms. Loehrs testified that she was unaware of any finding by a court that it had "serious concerns about the software." (RT 10/27/15: 16.) She claimed these "serious concerns were not just an opinion because it was based on "testing, analysis, [and] research." (Id.) However, she conceded that she had not personally conducted any testing. (Id.) While she claimed there was research supporting her view, she did not cite the research in her affidavit or supply a copy to the Court. (RT 10/27/15: 17.) She admitted that she was unaware of any cases where the evidence proved that ShareazaLE, the software used to download files, went beyond publicly available data and that this belief was a hypothesis. (RT 10/27/15: 18.)

When confronted with questioning that the portion of her declaration concerning a list of "publicly available" files referred to aMule, instead of eMule as stated her affidavit, Ms. Loehrs vacillated between stating that they were the same software and that they were variations of software. (RT 10/27/15: 21, 38.) She conceded that she did not state in her affidavit that there were two different variations of the software and that she was unsure whether the list she cited was in the aMule or the eMule file structure. (RT 10/27/15: 22.) She was unable to state whether there were two executable files, one for eMule and one for aMule. (RT 10/27/15: 56.) Regarding her reference to the existence of Peer Block on defendant's computer, Ms. Loehrs stated that she had "no idea"

1  whether the list of IP addresses was designed to stop IP addresses

2  that are designed to limit sharing because she had not tested Peer

3  Block.  (RT 10/27/15: 29.)  She was also unaware of the law

4  enforcement practice of using undercover IP addresses that don't

5  resolve back to their police department.  (RT 10/27/15: 32.)

6  When asked about the type of testing she would conduct on the

7  software, Ms. Loehrs' answer was vague.  (RT 10/27/15: 44.)  She

8  testified that she is not a software engineer, had no training in

9  commercial software development, and had never been retained by a

10  commercial software company to conduct testing.  (RT 10/27/15: 60.)

11  During questing by defense counsel, Ms. Loehrs testified that Det.

12  Syvock's affidavit referenced five files downloaded on October 16,

13  2014 and one file on November 23, 2014 and the logs provided by the

14  government did not support this information.  (RT 10/27/15:48-54.)

15  Specifically, defendant cited to Exhibit K for the fact that the

16  download of file Kidcam Mirey ended on December 30, 2014 at 16:46.

17  (RT 10/27/15: 52-54.)  While Det. Syvock's affidavit states earlier

18  dates when the IP addresses were identified and a direct connection

19  for downloading was made, he listed the specific starting and last

20  received dates and times for each downloaded file, including data for

21  Kidcam Mirey which were consist with the log.  <u>See</u> (Gov. Supp.

22  Brief., Ex. A, pp. 13-16).

23  **III.  <u>ARGUMENT</u>**

24  A. <u>Motion to Suppress Evidence</u>

25  Reviewing the totality of the evidence and applying the

26  objective circumstances of the situation from the perspective of a

27  reasonable person in the suspect's position, this Court should find

28  that defendant was not in custody and, therefore, no <u>Miranda</u>

advisement was required.  Here, the videotaped interview of defendant
provides irrefutable evidence of the interaction between defendant
and law enforcement during the majority of the incident.  As cited in
the government's previous briefing, Det. Syvock repeatedly made it
clear that defendant was free to leave.  Only approximately 15
minutes elapsed from the time that law enforcement entered
defendant's apartment until the video recording begins.  There is no
credible evidence that what occurred during that time was
sufficiently egregious to create a police-dominated atmosphere
outweighing the undisputed fact that defendant was told repeatedly
that he was free to leave.  For example, defendant's claim that the
rifle was pressed against his chest lacks credibility because
defendant's general account varied as to his interaction with law
enforcement at the door of the residence.  When confronted with these
different accounts, he was pushed into as opposed to out of the
apartment, defendant claimed that both occurred.  SA Speakman
testified that defendant was in the presence of the M-4 rifle for a
brief period of time because SA Speakman had the rifle pointed inside
the apartment as defendant passed because SA Speakman was focused on
other potential occupants of the residence.  Also, as SA Speakman
explained, it would have been against his training to press a weapon
against someone because doing so would make it possible for the
person to grab the firearm.  In addition, defendant saw the rifle
before Det. Syvock made it clear that defendant was free to leave.

     No evidence exists, other than defendant's self-serving
statements, that a reasonable person in defendant's situation would
not have felt free to leave.  As defendant's testimony progressed,
his claims grew increasingly bizarre and untrustworthy.  In the end,

defendant claimed that multiple officers told him that the noises from his stomach made him sound guilty.   In addition, defendant testified that he was embarrassed to tell anyone he needed to use the restroom despite the video reflecting that he casually discussed his interest in child pornography and masturbation.   Defendant's motion focuses on minor details in an effort to counter the totality of the evidence which weighs in the government's favor.   Defendant relies on still images from the video recording showing Det. Syvock place his hand on his firearm when they are deciding where they should sit for the interview.   It is not clear from the video (time stamp 7:15:43) that defendant even saw Det. Syvock put his hand on his gun.   In his declaration, defendant does not claim he saw Det. Syvock's hand on his gun.   From the video, there is no indication that this movement in context would have been viewed by a reasonable person as menacing or intimidating.   Furthermore, any discrepancy regarding what defendant was initially wearing is not dispositive.   What is undisputed is that Det. Syvock provided defendant with additional clothing because of the cool weather which is consistent with the rapport between defendant and Det. Syvock reflected on the video. Taking defendant's statement that he was wearing only his boxers until someone brought him a sweatshirt as true, a reasonable man would not have felt that because their neighbors could view them from a distance wearing only boxers that the police had created an environment such that he was not free to leave.   To a reasonable person, the effect of any modesty on his ability to leave would have been negated once additional clothing, such as the sweatshirt, was provided.   To the extent defendant's motion relies on evidence from his neighbors, their testimony at the hearing demonstrated that their

opportunity to observe the situation was limited by distance and in duration.  In addition, Mr. Klocke, the downstairs neighbor, claimed to have observed defendant being led away from the apartment by law enforcement which neither party contends occurred.

Defendant relies extensively on the Ninth Circuit opinion in United States v. Craighead, 539 F.3d 1073 (9th Cir. 2008).  However, there are several significant distinctions.  In Craighead, there was no recording of the statement that Craighead was free to leave. While the Craighead trial court found the agent's testimony credible that she told Craighead he was free to leave, that fact was disputed and the circumstances of the statement were unclear.  Id. at n.1. Specifically, the agent could not recall whether she told Craighead that he was free to leave after they entered the storage room and she closed the door.  Id. at 1079.  In this case, it is undisputed, because of the video, that defendant was told he was free to leave inside the bedroom when the door was closed.

The location and physical surroundings of the interview are important factors to be considered and, here, weigh in favor of the government.  In Craighead, the interview occurred in a storage room and the Ninth Circuit noted, "[a]n interview conducted in a suspect's kitchen, living room, or bedroom might allow the suspect to take comfort in the familiar surroundings of the home and decrease the sensation of being isolated in a police-dominated atmosphere."  Id. at 1088.  In addition, the storage room was unfurnished and "[i]n front of the door stood an armed detective wearing a raid vest."  Id. at 1089.  Craighead would have had to ask the detective to move in order to leave the room and the detective was not the person who told Craighead that he was free to leave.  Unlike Craighead, defendant was

7

1    seated closest to door, he did not have to ask anyone to move in
2    order to leave the room, Det. Syvock was wearing a polo shirt instead
3    of a raid vest, and Det. Syvock who conducted the interview was the
4    person who told defendant repeatedly that he was free to leave.  In
5    addition, unlike the sterile and cramped environment in Craighead,
6    defendant was interviewed in his mother's furnished bedroom.

7         Defendant claims that he was unsure whether he was free to leave
8    due to the number of officers and the fact Det. Syvock was from
9    Newport Beach Police Department and there were also agents present
10   from DHS.  In Craighead, there were three different law enforcement
11   agencies which caused Craighead confusion and resulted in his belief
12   that he might be "confronted by members of the other two agencies and
13   forbidden to leave the house."  Id. at 1088.  Defendant attempts to
14   claim that his situation was similar and he felt that because Det.
15   Syvock was not from DHS he did not have the authority to decide
16   whether defendant was free to leave.  However, defendant testified
17   that he knew the officers present were part of a single taskforce
18   which a reasonable person would have felt had a coordinated
19   authority.  While there were more officers involved in the execution
20   of the search warrant in this case, 14 as opposed to 8, defendant was
21   never in the presence of all of them at the same time because of
22   their difference roles.  At least five officers were assigned to the
23   perimeter team and defendant was on the deck while the search team
24   conducted its protective sweep.  In Craighead, the situation was
25   significantly more complex because it involved both military and
26   civilian law enforcement, Craighead was a military employee, and the
27   interview occurred on a military base.  Id. at 1077-78.

28

   B. <u>Motion to Compel Discovery</u>

   Defendant's motion to compel continues to be expansive
requesting (1) an installable copy of the Peer Spectre program,
(2) all documents in the government's possession regarding Peer
Spectre, including documents regarding the program's technical
specifications, and (3) all documents and records regarding any other
software, computer programs, or the like, used by Det. Syvock during
his investigation of defendant. (Def. Mot. to Compel, p. 6.)  As
drafted, this request could arguable include the software Det. Syvock
used to draft his reports.  Initially, it may have been unclear to
the defense the different roles of each program. The government has
attempted to answer questions and provide additional information,
such as the ShareazaLE logs. (Gov. Supp. Brief., Ex. B.)

   In order to prevail, defendant must make some showing as to
materiality.  Here, he has failed to do so.  Even in <u>United States v.</u>
<u>Budziak</u>, 697 F.3d 1105 (9th Cir. 2012), the case upon which defendant
relies most heavily, the Ninth Circuit noted that "neither a general
description of the information sought nor conclusory allegations of
materiality suffice; a defendant must present facts which would tend
to show that the Government is in possession of information helpful
to the defense." 697 F.3d at 1111 (citation omitted).  Here, Ms.
Loehrs' testimony and the few statements in her declaration are
either conclusory or not supported by the evidence.  She seems to
insinuate, although never expressly states, that the law enforcement
software overrode defendant's file-sharing settings.  However, this
hypothesis is not supported by her knowledge of any finding by a
court that it had "serious concerns about the software." (RT
10/27/15: 16.)  While she tried to bolster her claim by citing to

1    "testing, analysis, [and] research" she conceded that it had either
2    not occurred or was not provided to the court.  (Id.)  Furthermore,
3    she did not know any cases where the evidence proved that ShareazaLE,
4    the software used to download files, went beyond publicly available
5    data, (RT 10/27/15: 18.), and her affidavit lacked precision
6    regarding the aMule and eMule programs.  Her testimony regarding the
7    Peer Block program and any list the user enabled to "block IP
8    addressed associated with peer to peer file sharing" is not supported
9    by any testing of that program, knowledge of the type of IP addresses
10   that were blocked or that the program was capable of blocking an
11   undercover law enforcement IP address.  As a result, her implication
12   that the files that Det. Syvock downloaded were not "publicly
13   available" at the time of the investigation lacks credibility and
14   should be rejected by the court. (RT 10/27/15: 29, 32.)

15        Unlike the facts of Budziak and the cases cited by Ms. Loehrs in
16   her declaration, here, there is no concern that defendant never
17   possessed the content of the child pornography files because the same
18   files were found on his computer.  Accordingly, without a specific
19   allegation of a problem supported by some evidence, the proposition
20   that Det. Syvock downloaded the files from defendant's computer is
21   inherently less suspicious.  Without more, defendant has not met even
22   the minimal materiality requirement.  Additionally, as set forth in
23   the government previous briefing, this type of software is subject to
24   the limited law enforcement privilege.

25   **IV.  CONCLUSION**

26        For the reasons set forth in the government's briefing and the
27   testimony at the evidentiary hearing, defendant's motion to compel
28   discovery and motion to suppress should be denied.